Argued June 3, reversed and remanded September 10, 1953

## SPENCE *v.* ALLEN
260 P. 2d 949

*Asa L. Lewelling* of Salem argued the cause and filed a brief for appellant.

*Geo. A. Rhoten* of Salem argued the cause for respondent. On the brief were Rhoten & Rhoten, and Lawrence Brown.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK, TOOZE and PERRY, Justices.

PERRY, J.

This is an action for damages for breach of a contract entered into between the plaintiff, R. A. Spence, and the defendant, Thomas W. Allen, which is in words and figures as follows:

"AGREEMENT

THIS AGREEMENT, Made and entered into this 20th day of August, 1949 by and between RALPH A. SPENCE dba under the firm name and style of 'GLASSWEAVE MANUFACTURING AND SUPPLY COMPANY' hereinafter referred to as the FIRST PARTY, and THOMAS W. ALLEN dba under the firm name and style of 'THOMAS W. ALLEN, CO.' hereinafter referred to as the SECOND PARTY,

WITNESSETH:

WHEREAS FIRST PARTY is in the general business of manufacturing and distributing window fabrics and flexible glass substitutes and as such is the owner of various trade names in connection with said products;

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

FIRST PARTY does hereby lease the total exclusive sales and distribution right of said business in its entirety to SECOND PARTY for a term of twenty five (25) years, commencing on the first (1st) day of September, 1949, and ending on the thirty first (31) day of August, 1974 or at such sooner date as is hereinafter provided.

In connection with this lease FIRST PARTY does hereby agree to turn over to SECOND PARTY such materials as printed literature, mailing lists, printers cuts, and such like as SECOND

PARTY may desire, together with the use of all trade names in connection with said business.

SECOND PARTY agrees to purchase at production cost, the 'made up' Display Racks, together with the ten (10) measuring units, and the remaining small inventory of Film-O-Glass in Salem, Oregon, the same to be paid for either in cash or otherwise as agreed upon by September 1, 1949.

FIRST PARTY agrees to lend his assistance by way of counsel and advice to SECOND PARTY to help fully establish the business for the mutual good;

SECOND PARTY agrees to carry an adequate stock of merchandise in the approved warehouse, to carry on business without delay, ordering the same from sources now available, or from such sources as the future may provide, the same being approved by both parties.

As the sole consideration and full payment for this lease, SECOND PARTY agrees to pay FIRST PARTY an amount of money equivalent to ten (10) per cent of the net cost delivered to Portland, Oregon, of all products purchased by SECOND PARTY pertaining to this business. Said 10% shall be payable within a period of sixty (60) days after SECOND PARTY has sold said merchandise.

During the period of this lease, SECOND PARTY agrees to sell no other material similiar [sic] to Glassweave products and after the termination of this lease SECOND PARTY further agrees to sell no other products similiar [sic] to this Glassweave product which may in any way interfere with FIRST PARTY'S sale of Glassweave materials.

As part of this lease, FIRST PARTY does hereby grant to SECOND PARTY the exclusive sales rights of Glassweave products for the States of Oregon, Washington and Western Idaho, that being the same territory as is now presently covered by SECOND PARTY with reference to his other merchandise. FIRST PARTY further gives SEC-

OND PARTY the non-exclusive right to sell Glass-weave products in such territory as SECOND PARTY may desire to sell the same in, so long as FIRST PARTY has given no other person the exclusive right to sell Glassweave products in said non-exclusive territory.

SECOND PARTY agrees to cover the exclusive territory above mentioned regularly, the same as with his other materials sold, calling on both the jobbers and the dealers in said territory and do such advertising as he may think helpful, including the sending of literature, etc. to such places as may be thinly populated and where his territory coverage is less; and to make every practical effort to keep prices competative [sic] and promote the general business for both parties' mutual interest.

SECOND PARTY further agrees to do every reasonable thing in his power to keep the integrity and good will of said Glassweave business. In this connection, it is understood, of course, that FIRST PARTY, from and after the date of this agreement, will cease to carry on said business and SECOND PARTY shall have the exclusive management and operation of the same during the period of this lease.

FIRST PARTY further warrants that said business is at this time free and clear of all bills and other obligations.

It is agreed that SECOND PARTY shall not assign this lease or sell the same without first receiving the consent of FIRST PARTY.

IT IS FURTHER UNDERSTOOD that this agreement is contingent upon the present source of supply, or some satisfactory substitution thereof, being available for one (1) year after this date and in the event that new items or materials of similiar [sic] nature are needed to further this business, FIRST PARTY shall lend his full information and counsel to SECOND PARTY to help secure the same.

BOTH PARTIES agree that the business shall operate from Salem, Oregon as is, through September 1, 1949 filling all orders as of that date in order to reduce the inventory and save moving of the same; thereafter the SECOND PARTY shall take over the same in accordance with the terms of this agreement.

IT IS AGREED further that in the event the SECOND PARTY should die, become totally incapacitated or for any other reason be unable to continue selling said products for a period of one year during this lease, then the distribution of said products shall revert back to FIRST PARTY and this agreement shall as of said date be null, void and of no further effect whatsoever; provided, however, that FIRST PARTY may at any time during said year and at his discretion assist in keeping up said sales so that the good will of said business will not suffer too greatly during said year.

FINALLY IT IS AGREED that this agreement shall be binding upon the heirs, administrators and successors of both parties hereto.''

The plaintiff by his complaint alleged the contract and the breach thereof. The defendant admitted the written agreement and alleged the termination thereof as of the 1st day of August, 1950, basing his right of termination upon fraud and misrepresentations of the plaintiff. After the parties had adduced their evidence, the defendant moved the court for a directed verdict upon two grounds: First, that the statement in the contract ''it is further understood that this agreement is contingent upon the present source of supply, or some satisfactory substitution thereof being available for one year after this date'' is a condition precedent to the creation of liability and it was incumbent upon the plaintiff to allege and prove that there was a source of supply for the period of one year, the plaintiff hav-

ing neither pleaded nor proved this matter; and second, that the plaintiff had failed to prove any damages by reason of the breach of the contract of lease. The motion of the defendant was sustained and plaintiff appeals.

It is a general proposition of law that whenever a plaintiff's right of action depends on a condition precedent then the plaintiff must allege the fulfillment of the condition or a legal excuse for its nonfulfillment. 17 CJS 1168, Contracts, § 537; *Clerin v. Eccles,* 98 Or 345, 193 P 1045. A "condition precedent" and a "condition subsequent" are defined in 1 Restatement of the Law, Contracts, 359, ch 10, § 250, as follows:

> "'* * * a 'condition' is according as the context indicates, either a fact * * * which, unless excused * * * (a) must exist or occur before a duty of immediate performance of a promise arises, in which case the condition is a 'condition precedent', or
>
> (b) will extinguish a duty to make compensation for breach of contract after the breach has occurred, in which case the condition is a 'condition subsequent,' * * *.'"

We are of the opinion that the provision for a continuous source of supply of useable merchandise for a period of one year is a condition that would relieve the defendant from his obligations under the contract should that condition arise. No penalty attaches to the failure of the plaintiff to provide the merchandise upon this contingency happening. This provision is solely for the benefit of the defendant and subject to his option should that condition arise. It is, therefore, a condition subsequent, to be relied upon by way of defense.

The damages sought to be recovered in this case as pleaded are general damages arising from the

failure of the defendant to carry out the terms of the contract of lease.

The defendant admitted the execution of the agreement and its abandonment after his commencement upon the performance thereof, pleading justification therefor, the fraud and misrepresentations of the plaintiff.

■ It is a general principle of law that if an agreement is alleged together with the breach thereof, damages are presumed to flow from this breach, and, in the absence of anything else, nominal damages will be awarded. *Rainier v. Masters,* 79 Or 534, 542, 155 P 1197, 154 P 426; 1 Sedgwick on Damages, 9th ed, 179, Nominal Damages, § 106.

There is, however, evidence in this case that the breach of the agreement by the defendant resulted in substantial damage to the plaintiff.

Since there is to be a retrial of this cause, we will comment on the plaintiff's offered exhibit 13. This exhibit consists of an agreement between the defendant and Pyroxylin Products, Inc., an Illinois corporation, for the exclusive sales and distribution by the defendant of certain products formerly sold to and distributed by the plaintiff, Ralph A. Spence. The agreement as entered into on the 14th day of September, 1949, shows upon its face that the defendant was taking over and using the trade names of the Pyroxylin products used by plaintiff and under the plaintiff's operational business name of ''Glassweave Manufacturing & Supply Co.'', and that both Pyroxylin Products, Inc., and the defendant desired 'the continuation of the sale and distribution of products made by Pyroxylin' under the lease agreement of plaintiff and defendant. Further it is an agreement by Pyroxylin Products, Inc., to the

best of their ability to supply the defendant all of their product required in the business operation of the defendant. Should the issue arise as to the availability of this particular product or that defendant was misled into believing that plaintiff manufactured "Pyroxylin", this exhibit would become material.

The judgment of the lower court is reversed and remanded for further proceedings in conformity with this opinion.